UNITED STATES of America

v.

Robert G. MacFARLANE,
Mohammed Mustakeem.

Crim. A. No. 90–166.

United States District Court,
W.D. Pennsylvania.

Jan. 18, 1991.

---

Margaret Picking, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Caroline Roberto, Gary Zimmerman, Pittsburgh, Pa., for defendants.

## MEMORANDUM ORDER

LEE, District Judge.

On or about September 13, 1990, in the Western District of Pennsylvania, a Federal Grand Jury returned a one-count Indictment against the above-named defendants. Therein, it is specifically charged that from on or around August 12, 1990, and continuing thereafter to on or about August 16, 1990, the defendants did knowingly, intentionally and unlawfully conspire together and with one another and with persons both known and unknown to distribute and possess with the intent to distribute in excess of five hundred (500) grams of a mixture and substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, contrary to the provisions of Title 21, U.S.C. § 841(a)(1), and in violation of Title 21 U.S.C. § 846.

Before us for disposition are defendants' pre-trial motions. For the purpose of clarity, we will first address the pending motions of both defendants which are identical in form and substance followed by any separate remaining motions.

## PRE–TRIAL MOTIONS [1]

1. Motions for Early Disclosure of "Jencks" material.

2. Motions for Disclosure of Impeaching Evidence.

3. Motions to Preserve Evidence.

4. Motions for Bill of Particulars as to Conspiracy.

5. Motions for Notice of Prosecution of Intention to Use Evidence Arguably Subject to Suppression.

6. Motions to Interview Prospective Witnesses.

7. Defendant MacFarlane's Motion to Suppress Post Arrest Statements.

8. Defendant MacFarlane's Motion to Compel Government to Disclose Written Statement of Uncharged Misconduct.

9. Defendant Mustakeem's Motion for Discovery.

10. Defendant Mustakeem's Motion for Limited Release to Assist in Preparation of Defense.

11. Defendant MacFarlane's Request for a Hearing on Audibility of Government Tape Recordings.

## BACKGROUND

On November 29, 1990, the Court heard argument on all pre-trial motions in the above-referenced matter. At the request of defendant MacFarlane, the record was kept open. The defendant Mustakeem agreed that the Court could defer its ruling on all of the Motions pending the introduction of additional evidence by MacFarlane. However, Mustakeem requested the Court to rule on the Motions identified in Nos. 9 and 10, *supra.*

In the interim, the Court entered an Order on December 27, 1990 with regard to Motion No. 10, denying said Motion. However, the Court directed the Warden of the Federal Correctional Institution at Morgantown, West Virginia, to permit Mustakeem's counsel to visit with him daily from 7:00 a.m. to 7:00 p.m., which is beyond the normal visiting hours.

With regard to Motion No. 9, at the direction of the Court, the government obtained information from the Administrative Assistant to the Warden of FCI Morgantown, Donald Belknick, which eventually led to the defendant's abandonment of this Motion as discussed hereinafter.

Also in the interim, at 8:37 a.m. on December 21, 1990, defendant Mustakeem filed a Motion to Review Detention Order previously entered on August 23, 1990. Counsel for Mustakeem requested the Court to conduct a hearing on his Motion on the same date it was filed with the Court since counsel would be out of town the following week. Due to previously scheduled matters, the Court was unavailable and argument on this and all outstanding motions was therefore scheduled for January 4, 1991.

On January 4, 1991, argument commenced without the benefit of MacFarlane's counsel who was unavailable because she was out of town. At this argument, defendant Mustakeem also abandoned his Motion to Review Detention Order because counsel conceded that the defendant could not effectively rebut the statutory presumption and instead, orally motioned to have his client removed from FCI Morgantown and placed in the Armstrong County Jail or some other nearby facility. Counsel's Motion was premised upon the fact that the distance from Pittsburgh to Morgantown, West Virginia, along with the fact that his client was under a twenty-three hour lock-up, made it very difficult to adequately prepare for trial.

A final hearing was scheduled for January 14, 1991, at which time defendant MacFarlane presented no testimony, but did make additional argument on his suppression issue, his request for early disclosure of the government's intention to use uncharged misconduct, the audibility of government tape recordings, and pre-trial release for trial preparation.

---

1. Defendant Mustakeem filed a subsequent Motion to Review Pre-trial Detention Order which was abandoned at the January 4, 1991 argument due to defendant's concession that he would be unable to overcome the statutory presumption found at 21 U.S.C. § 801 et seq.

The Court hereinafter will discuss the Motions, including the defendant Mustakeem's Motions identified in Nos. 9 and 10.

## DEFENDANT MUSTAKEEM'S MOTION FOR DISCOVERY

In his Motion, defendant Mustakeem indicates that since his detention in Butler County Jail and the Federal Correctional Institution in Morgantown, West Virginia, he and his counsel have had numerous telephone conversations regarding trial strategy. Defendant further points out that the pay telephones at FCI Morgantown have a sign posted on them which informs the inmate that all telephone calls will be monitored. In this light, defendant seeks to determine the following:

A. Were any telephone calls made by defendant monitored and/or recorded by any law enforcement or jail personnel? If so, defendant asks the Court to compel the government to prepare a log or present the records of any intercepted calls.

B. In particular, were any calls between defendant and his attorney monitored and/or recorded? If so, has the content of these calls been disclosed to anyone and, if so, to whom and when.

In response to defendant's Motion and pursuant to the Court's directive, the government prosecutor contacted the administrative assistant to the Warden of FCI Morgantown, Mr. Donald Belknick, to determine the Bureau of Prison's policy with regard to the monitoring of prisoner's telephone calls from prison.[2] The sum and substance of the government's representation on this issue, is that the government does not have in its possession any information germane to defendants' Motion. Based upon this representation, the defendant abandoned this Motion at the argument held on January 4, 1990, to review defendant Mustakeem's pre-trial detention Order.

## DEFENDANT MUSTAKEEM'S MOTION FOR LIMITED RELEASE TO ASSIST IN DEFENSE PREPARATION

Defendant Mustakeem next asks the Court to authorize his pre-trial release, limited in time and scope, for the sole purpose of assisting in defense preparation. Essentially, defendants argue that the travel time of approximately 1½ hours to FCI Morgantown effectively deprives counsel and the defendants of meaningful trial preparation. Defendant Mustakeem argues his trial preparation is further hampered by the fact the he remains under a twenty-three hour lock-up per day pursuant to a decision made by FCI Morgantown officials. In the alternative, defendant Mustakeem has orally moved to be transferred from FCI Morgantown or some other nearby facility to facilitate trial preparation.

We note at Part III of the Magistrate Judge's Order of Detention Pending Trial the following relevant language: "The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel." 18 U.S.C. § 3142(i)(3). This same subsection provides that a detainee may be released for the purpose of trial preparation to the "extent that the judicial officer determines such release to be necessary for preparation of the per-

---

**2.** Based upon Mr. Belknick's response, FCI, Morgantown, maintains a phone monitoring system for social telephone calls. All inmates are made aware of this policy when they enter the facility through the following means: (1) an admission/orientation handbook provided to all inmates who enter the institution; (2) a document entitled Form 109A; (3) stickers placed on the phones which are monitored advising the inmates that calls placed over these phones are monitored; and (4) each inmate is required to sign a notice indicating his or her awareness that a particular telephone line is monitored by the prison. Tape recordings of monitored calls are made strictly for the institution's purposes and do not leave the institution without a Court order.

The government's letter further advises that non-monitored telephone lines are available to inmates to contact their attorneys. A log is maintained for the non-monitored telephones. Any inmate who wishes to place a call to his attorney may use a telephone which is not monitored by the prison by contacting his prison counselor and advising the counselor that he wishes to make such a call. Call from inmates to their attorneys are not monitored or recorded.

son's defense or for another compelling reason." 18 U.S.C. § 3142(i).

At argument, defendant failed to set forth any compelling or otherwise persuasive justification to support his position for a limited release vis-a-vis trial preparation. At the January 4, 1991, argument, counsel for Mustakeem and counsel for the government agreed that the Court could independently investigate the possibility of the defendant Mustakeem being moved to the Armstrong County, Pennsylvania, jail. The Court was advised that under the present conditions, it was not possible to move the defendant Mustakeem to either the Armstrong County, Pennsylvania, jail or the Butler County, Pennsylvania, jail. Moreover, the Court determined that the FCI at Morgantown, West Virginia, is approximately 85 miles from the Federal Courthouse in Pittsburgh and the normal driving time is one hour and twenty minutes, and the Armstrong County, Pennsylvania, jail located in Kittanning, Pennsylvania, is approximately 40 miles from the Federal Courthouse in Pittsburgh and the normal driving time is one hour. The U.S. Marshal Service indicated it would attempt to move defendant Mustakeem to FCI Hancock, West Virginia, located in Weirton, West Virginia, on or about January 25, 1991. FCI at Hancock, West Virginia, is approximately 45 miles from the Federal Courthouse in Pittsburgh, and the normal driving time is approximately one hour and ten minutes.

Therefore, the Court entered an Order denying the Motion as stated, but instead, extended the hours currently made available by FCI Morgantown for counsel's visits with his client.

In addition, the Court entered an Order directing the Warden at FCI Morgantown, West Virginia, to permit both defendants to communicate with their counsel on unmonitored telephones from 7:00 a.m. to 11:00 p.m.

### DEFENDANTS' MOTIONS FOR EARLY DISCLOSURE OF "JENCKS" MATERIAL

Defendants move the Court for entry of an Order directing the prosecution to provide to them, not less than ten (10) days before the trial of this cause, all statements of the type commonly referred to as "Jencks" material.

The Jencks Act, 18 U.S.C. § 3500(a), specifically provides that no statement or report in the possession of the United States which was made by a government witness or prospective government witness shall be the subject of subpoena, discovery, or inspection until such witness has testified on direct examination in the trial of the case. In its Brief, the government challenges, as excessive, defendants' request for production of these materials not less than ten days prior to the commencement of trial.

While we recognize that disclosure under this section is required only at trial and that there is no requirement for prior disclosure, we find it is reasonable, under the present circumstances, to Order an earlier time for the release of so-called "Jencks" material. Inasmuch as trial in this matter has been set for January 28, 1990, an Order shall be entered forthwith directing the government to furnish defendant with all "Jencks" material by 10:00 a.m. on Friday, January 25, 1990.

### DEFENDANTS' MOTIONS FOR DISCLOSURE OF IMPEACHING EVIDENCE

Defendants' request for "impeachment-type" Brady material seeks the disclosure of all records and information that reveals the following:

(A) All felony convictions, guilty verdicts, or juvenile adjudications or guilty verdicts attributed to any witness who may be called by the prosecution, including but not limited to relevant "rap sheets";

(B) All prior misconduct or bad acts attributed to such witnesses;

(C) All consideration or promises of consideration given to or for the benefit of such witnesses;

(D) All criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against

the witness, and probationary, parole or deferred prosecution status of the witness, and any civil, tax court, court of claims, administrative or other pending or potential legal disputes or transactions with the prosecution or any other agency, state or federal;

(E) The existence and identification of each occasion on which the witness has testified before any court, grand jury, or other tribunal or body in relation to the defendant or otherwise bearing upon the facts of this case;

(F) The existence and identification or each occasion on which each witness who is an informer, accomplice, co-conspirator or expert has testified before any court, grand jury or other tribunal or body;

(G) All personnel files for the witnesses and the existence and identity of all prosecutorial files for the witnesses;

(H) The same records identified in A through G with respect to each non-witness; and

(I) All other records or information which could arguably be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the prosecution's evidence.

■■■■ Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government is not required to disclose neutral or inculpatory evidence, *United States v. Polowichak*, 783 F.2d 410 (4th Cir.1986), evidence available to the defense from other sources or evidence which the defendant already possesses, *United States v. Hicks*, 848 F.2d 1, (1st Cir.1988), evidence the prosecutor does not possess, *United States v. Kraemer*, 810 F.2d 173 (8th Cir.1987), or evidence of which the prosecutor could not reasonably be imputed to have knowledge or control. *Campbell v. Fair*, 838 F.2d 1 (1st Cir.1988). Moreover, the prosecutor is not required to make files available to the defendant for an open-ended "fishing expedition" for possible *Brady* material. *United States v. Davis*, 752 F.2d 963 (5th Cir.1985).

■■■■ Under the rubric of *Brady* material, Defendants' Motion contemplates the production of information which is not purely exculpatory, that is, information which might be used to impeach government witnesses. In *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Court applied *Brady* to a situation akin to one contemplated by defendants' motion. In *Giglio*, the prosecution withheld the fact that it had promised a key witness he would not be prosecuted for his part in a crime if he testified against his companion. The Court found that because the credibility of the witness was at issue, it was a violation of due process not to inform the jury of the deal. *Id.* at 153, 92 S.Ct. at 766.

Under *Giglio*, our focus is directed to the materiality of the information sought by defendants. Materiality has been most recently defined in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) as "material in the sense that its suppression undermines confidence it the outcome of the trial." *Id.* at 678, 105 S.Ct. at 3381. In their concurring Opinion as to part III of the Court's Opinion, Justices Blackmun and O'Connor agreed that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 682, 105 S.Ct. at 3383. Under this standard, a "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Id.* at 682, 105 S.Ct. at 3383. This Circuit has adopted the "reasonable probability" standard in *United States v. Pflaumer*, 774 F.2d 1224 (3rd Cir.1985).

In this instance, plaintiff has made a request for specific "impeachment-type" "Brady" material. Under the relevant case law, disclosure of this information is required only when there is a "reasonable probability" that the failure to make such a disclosure is sufficient to undermine confidence in the outcome of the trial. While acknowledging its obligation under *Brady*, to disclose such evidence at the time it turns over the "Jencks" material in this case, the government specifically denies possessing any information that would be subject to defendants' motion.

Defendants' Motions shall be denied. To the extent the government has in its possession any "impeachment-type" material it shall disclose the same to the defendants in the manner prescribed in the Order which shall be entered forthwith.

## DEFENDANTS' MOTIONS TO PRESERVE EVIDENCE

■ By this Motion defendants request the Court to enter an Order directing the government to preserve unaltered all evidence, including surveillance logs and notes or reports by law enforcement officers which may relate to this case. Defendants further request the Court to Order the government to provide counsel for the defendants with reasonable notice of the prospective unavailability of any witnesses and reasonable opportunity to interview and secure compulsory process to such witness.

The government does not oppose defendants Motion for the Preservation of Evidence. However, the government indicates it is not prepared to produce a list of potential government witnesses. Our review of Rule 16 of the Federal Rules of Criminal Procedure leads us to conclude that statements made by government witnesses or prospective government witnesses, except as provided in 18 U.S.C. § 3500 are not subject to disclosure under the Rule. Fed. R.Crim.P. 16(d)(2).[3]

While defendants' Motion seeks to secure a reasonable opportunity to interview and secure compulsory process as to any witness the government contemplates calling, such a demand is not authorized by Rule or Statute. Moreover, granting defendants the right to review a list of government witnesses before trial, without regard to the issue of availability, would more likely than not reveal the government's investigatory work which is precisely the kind of information intended to be excluded from discovery. Therefore, the defendants' Motion will be denied.

## DEFENDANTS' MOTIONS FOR BILL OF PARTICULARS AS TO CONSPIRACY

■ Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, the defendants' Motions for a Bill of Particulars seeks the complete identity of all unindicted co-conspirators, the acts of each alleged co-conspirator, the objectives of the conspiracy, and the substance of any statements made in furtherance of the conspiracy and the identity to whom such statement is attributed.

In response to defendant's Motions, the government states the defendants have made no showing that the identities of other alleged "unindicted" co-conspirators are necessary to their preparation for trial and that these are merely attempts to obtain the minutia of the government's case, the theory of the case and evidentiary matters outside the proper scope of a Bill of Particulars. Additionally, the government maintains it is not required to reveal the precise details that each defendant and his co-conspirators played in forming and executing a conspiracy.

We recognize that motions for a bill of particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial. *United States v. Rosa*, 891 F.2d 1063 (3rd Cir.1989). We also note that in striking a prudent balance between the defendants' legitimate interest in securing information concerning the government's case and numerous countervailing considerations including, but not limited to the personal security of witnesses, the disclosure of the identity and statements of unindicted co-conspirators who the government plans to call as witnesses may be ordered. See *United States v. Barrentine*, 591 F.2d 1069 (5th Cir.), *cert. denied*, 444 U.S. 990,

---

**3.** 18 U.S.C. § 3500(a) provides:
 (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective

Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

100 S.Ct. 521, 62 L.Ed.2d 419 (1979). At the same time, the defendant is not entitled to either a wholesale discovery of the government's evidence nor to a list of the government's witnesses. *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir.1972), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

Our determination necessarily focuses upon whether (i) the defendant is sufficiently informed of the nature of the charges being brought against him; (ii) to avoid surprise at trial; and (iii) to protect against double jeopardy because of an inadequately described offense. *United States v. Addonizio*, 451 F.2d at 63, 64).

With these principles in mind, defendants' motions shall be denied inasmuch as they fail to show that the identities of any alleged unindicted co-conspirators is necessary to their preparation for trial.

## MOTIONS FOR NOTICE OF PROSECUTION OF INTENTION TO USE EVIDENCE ARGUABLY SUBJECT TO SUPPRESSION

 Defendants have moved to require the government to provide notice of its intention to use evidence arguably subject to suppression. Pursuant to Federal Rule of Criminal Procedure 12(d)(2), the defendants argue that such a disclosure will minimize if not eliminate many trial objections and interruptions, thus contributing to judicial efficiency and economy as well as ensuring the preservations of their trial rights.

In response, the government indicates that as to each defendant in this case, it has previously notified defense counsel of the following information which might be the subject of their Motions:

1. That conversations were recorded throughout the use of consensual interceptions. Tape recordings have been provided to defense counsel for defendant MacFarlane.

2. That defendant MacFarlane made incriminating statements post-arrest to law enforcement officers. A report of that statement has been provided to defense counsel.

The government contends the above revelations constitute all of the information in their possession which may lead to a motion to suppress evidence. To the extent that additional information of the same kind becomes available to the government, it has also represented to defense counsel and the Court that immediate notification will be made to the appropriate counsel. Finally, the government has indicated its continuing willingness to respond to any inquiry concerning information which is relevant to defendants' Motions.

In view of the government's prior disclosures and assurances of future notice should pertinent information become available prior to trial, defendants' Motions shall be denied.

## MOTIONS TO INTERVIEW PROSPECTIVE WITNESSES

By this Motion, defendants ask the Court to afford defendants an opportunity, "equal to that of the prosecution", to interview prospective witnesses. The government has responded that should the Court direct the defendants to submit a list of those witnesses whom they desire to interview, the government will advise each of the named witnesses of the defendants' desire to interview them and will advise counsel whether and under what circumstances each individual would be willing to submit to an interview.

To the extent that defendants' Motion has been previously addressed by the Court in its ruling on the defendants' Motion to Preserve Evidence, the same determination shall be applied to defendants' Motion to Interview Prospective Witnesses with leave, as invited by the government, for the defendants to submit to the government a list of names of potential witnesses whom they wish to interview. Therefore, the defendants' Motion as drawn is denied.

## DEFENDANT MacFARLANE'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

 On October 31, 1990, defendants filed a Motion for Notice by the Prosecu-

tion of Intention to Use Evidence Arguably Subject to Suppression. On or about November 13, 1990, defendant received notice of the government's intention to use defendant's post-arrest statements which were allegedly made to law enforcement officers on the night of his arrest.

Simply stated, on August 16, 1990, at approximately 12:55 a.m., Special Agent Frank J. Schmotzer arrested defendant MacFarlane. The defendant alleges that while he was in custody, Special Agent Schmotzer interrogated him in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Based upon the hearing conducted on November 29, 1990, The Court now makes the following findings.

1. In the early morning hours of August 16, 1991, Special Agent Frank J. Schmotzer, City of Pittsburgh policeman, Jack Smith, and other law enforcement officers and undercover agents were conducting a reverse sting operation involving, among others, defendant Robert MacFarlane.

2. On or around 12:55 a.m., upon completion of their drug transaction between themselves and an informant, defendant MacFarlane and Todd Wright exited the informant's room located on the 6th floor of the Greentree Marriott Hotel.

3. Upon entering the hotel hallway, defendant MacFarlane and Todd Wright were lawfully arrested by Special Agent Frank J. Schmotzer. The arresting officer identified himself as a federal narcotics officer and immediately took the suspects to a nearby room also being used in the investigation. Pittsburgh police officer, Jack Smith assisted in the arrest.

4. Once in the room, the suspects were placed on the floor and a complete field search of their persons was conducted. While lying face down and before any communication or interrogation was commenced, Special Agent Schmotzer gave MacFarlane and Wright their Miranda warnings by reading, verbatim, from a small yellow card identified as a DEA form which has been made a part of the record.

5. After he had been given his rights, the defendant made statements in response to questions asked by Special Agent Schmotzer. The defendant made no request for assistance from counsel prior to offering an unsolicited remark and in responding to Special Agent Schmotzer's questions.

6. The defendant requested that he be able to speak with counsel only when asked specific questions about others involved in the transaction. At this point, no further interrogation of the defendant took place.

7. The arresting officer did not make any threats or promises to induce the defendant to make any statements.

Based upon these findings, we conclude that no violations of MacFarlane's *Miranda* rights have occurred. MacFarlane's detention and arrest by Special Agent Schmotzer reveal no violations of the *Miranda* safeguards which were designed to vest a suspect in custody with an added measure of protection against coercive police practices.

Accordingly, defendant MacFarlane's Motion to Suppress is hereby, denied.

## DEFENDANT MacFARLANE'S MOTION TO COMPEL GOVERNMENT TO DISCLOSE WRITTEN STATEMENT OF UNCHARGED MISCONDUCT

Defendant MacFarlane seeks to compel the government to disclose its intention to use evidence at trial consisting of uncharged misconduct pursuant to Rule 404(b) under the Federal Rules of Evidence. Defendant contends that his rights to due process and effective representation will be devastated absent a favorable ruling on his Motion.

We find no case law in this circuit requiring the disclosure of such information. The defendant cites the case of *United States v. Baum*, 482 F.2d 1325 (2nd Cir. 1973), for the proposition that the disclosure rather than suppression of uncharged misconduct promotes the proper administration of criminal justice. While such a statement has obvious appeal, we find that the conduct of the government in *Baum* is readily distinguished from the conduct of

the government in the instant case. In *Baum,* the government actively concealed the identity of its final witness and it was this act of concealment which was condemned by the Court. Here, however, no such assertion can be made.

We are also satisfied there are sufficient safeguards in the Federal Rules of Evidence to ensure against the admission of improper evidence of uncharged misconduct. In determining the admissibility of evidence under Rule 404(b), the Court must first determine whether the proffered evidence is relevant for a purpose other than to show a propensity or disposition on the part of the defendant to commit a crime. Additionally, the Court must balance the same to determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or possibly misleading to the jury. Rule 403, Federal Rules of Evidence; *United States v. Herman,* 589 F.2d 1191 (3d Cir.1978). We conclude that the Court will be in a better position to rule on the admissibility of these matters during the course of trial.

### DEFENDANT MUSTAKEEM'S MOTION FOR REVIEW OF PRE–TRIAL DETENTION

On January 4, 1991, argument was scheduled on the defendant's Motion to review the pre-trial detention Order entered by Magistrate Judge Ila Sensenich. However, at argument, no evidence was adduced by the defendant because his counsel believed that he could not overcome the statutory presumption. In light of the fact that this Motion has been abandoned, no disposition by the Court is necessary.

### DEFENDANT MacFARLANE'S REQUEST FOR A HEARING ON THE AUDIBILITY OF GOVERNMENT TAPE RECORDINGS

After counsel conducted her own review of a second set of tape recordings provided to her by the government, the Court was informed that no question regarding audibility remained for the Court's consideration. As such, no disposition by the Court is necessary.

An appropriate Order regarding the Court's disposition of the defendants' pre-trial Motions shall be entered forthwith.