979 P.2d 648

**STATE of Idaho, Plaintiff–Respondent**

v.

**Antonio AVELAR, Defendant–Appellant.**

No. 24020.

Supreme Court of Idaho,
Boise, November 1998 Term.

April 2, 1999.

Rehearing Denied July 7, 1999.

---

Nevin, Herzfeld & Benjamin, Boise, for appellant. Dennis K. Benjamin argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

WALTERS, Justice.

This is an appeal from the denial of Antonio Avelar's "Motion to Dismiss or, in the Alternative, For A New Trial," which was brought after this Court upheld his convic-tion for delivery of a controlled substance. We affirm the district court's denial of Avelar's motion.

## BACKGROUND AND PRIOR PROCEEDINGS

A jury found Avelar guilty of delivery of a controlled substance (cocaine) on March 1, 1991. The Court of Appeals reversed, *State v. Avelar* 124 Idaho 317, 859 P.2d 353 (Ct. App.1993) (*Avelar I* ), and Avelar was retried on March 29, 1994. Again, the jury found Avelar guilty. The trial court denied Avelar's post-trial motions for acquittal and for a new trial, and sentenced him to the custody of the Board of Corrections for ten years, with two years fixed as a minimum term of confinement.

In a separate proceeding initiated shortly after Avelar's first trial, the Idaho State Tax Commission assessed $49,200 in taxes and penalties [1] under Idaho's drug stamp act.[2] Two weeks later the Commission filed a Notice of Tax Lien on Avelar's property. In April 1995, while the appeal from his second trial was pending, Avelar settled with the Tax Commission by paying $1223.98.

The Court of Appeals, and ultimately this Court, affirmed Avelar's criminal conviction in the second trial. *State v. Avelar* 129 Idaho 700, 931 P.2d 1218 (1997) (*Avelar III* ) *aff'g* 129 Idaho 704, 931 P.2d 1222 (1996) (*Avelar II* ). However, Avelar has not yet served any of the imposed prison sentence. Before the execution of his sentence, Avelar filed another Motion to Dismiss or, in the Alternative, for a New Trial. Avelar now appeals from the district court's denial of this motion. Avelar's appeal raises the following issues:

1. Would the execution of Avelar's sentence after he paid the drug stamp tax violate the multiple punishments bar of either the state or federal constitutions?

---

1. Avelar's tax liability included the amount of the tax ($24,600) plus a 100% penalty for failure to pay the tax.

2. A criminal charge for failure to permanently affix official indicia of the state tax commission was included in the complaint against Avelar. However, this count was dismissed before trial.

2. Did the district court abuse its discretion by denying Avelar's Rule 34 motion for a new trial?

3. Did the district court abuse its discretion by denying Avelar's Rule 48 motion to dismiss in the interests of justice?

## I.

## DOUBLE JEOPARDY

■ Avelar argues that the execution of his sentence after he has already paid the drug stamp tax would be a double punishment in violation of the double jeopardy provisions in the Constitutions of the State of Idaho and the United States. We disagree.

■ The prohibition against double jeopardy encompasses both multiple prosecutions and multiple punishments for the same offense. *State v. Pizzuto,* 119 Idaho 742, 756, 810 P.2d 680, 694 (1991); *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The multiple prosecution component of double jeopardy "ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence." *Ohio v. Johnson,* 467 U.S. 493, 498–99, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). The multiple punishment component has been interpreted to provide two different protections. First, this component "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Id.* at 499, 104 S.Ct. 2536. It thus prohibits the imposition of a sentence in excess of that authorized by the legislature. Second, in *U.S. v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the United States Supreme Court extended this aspect of double jeopardy to prohibit punishments imposed in separate proceedings even when authorized by the legislature.

■ Double jeopardy protection is triggered by the attachment of jeopardy. *Crist v. Bretz,* 437 U.S. 28, 32–33, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). In this case, jeopardy attached when the jury was sworn to hear Avelar's first criminal trial. *State v. Stevens,* 126 Idaho 822, 892 P.2d 889 (1995).

■ In *Avelar II,* the Court of Appeals rejected Avelar's contention that his second trial violated his double jeopardy protections. The Court of Appeals rejected Avelar's contention under the United States Constitution because Avelar's first trial was reversed for prosecutorial misconduct, and "retrial following the reversal of a conviction on grounds other than the insufficiency of the evidence does not offend double jeopardy principles." *Avelar II* at 706, 931 P.2d at 1224. The Court of Appeals rejected Avelar's argument that the Idaho Constitution provides greater protection because Avelar raised the issue for the first time on appeal. Idaho Criminal Rule 16(b)(6) provides that all double jeopardy challenges must be raised prior to trial. The failure to make a timely motion to dismiss bars a defendant from asserting that theory on appeal. *Avelar II* at 706, 931 P.2d at 1224.

Avelar now challenges the execution of the sentence imposed in that second trial. Avelar argues that he should be able to challenge the execution of the sentence, although he was unable to challenge the trial itself, because of the intervening payment of the drug stamp tax. Since any double jeopardy challenge that existed prior to the beginning of Avelar's second trial was waived under I.C.R 16(b)(6) as recognized in *Avelar II,* Avelar's current contention is dependent upon a distinction between the attachment of jeopardy in the context of punishment and the attachment of jeopardy in the context of prosecution. Avelar argues that although jeopardy may have attached in this case in the prosecution context, jeopardy did not attach in the punishment context until Avelar paid the drug stamp tax. Thus, Avelar contends that his current double jeopardy challenge did not exist before trial; it could not have been raised until jeopardy attached in the punishment context.

In support of his position, Avelar relies upon *U.S. v. Von Moos,* 660 F.2d 748 (9th Cir.1981). In *Von Moos* the defendant com-

mitted perjury during his trial for bank robbery. The judge considered the perjury when sentencing the defendant on the bank robbery conviction. When the defendant subsequently pled guilty to perjury, the judge entered an order stating that he had no legal authority to sentence the defendant for perjury because the perjury was used to enhance his sentence for bank robbery. On appeal, the Ninth Circuit first noted that

> Jeopardy attaches in the double punishment context when the defendant begins serving the sentence. *See United States v. Ford* 632 F.2d 1354, 1380 (9th Cir.1980). Because Von Moos has not begun serving a sentence pursuant to the challenged order, jeopardy has not attached. If we were to reverse and remand for sentencing, the sentence on remand would not constitute double jeopardy.

*Von Moos,* 660 F.2d at 749. The court then reversed and remanded the case for sentencing holding that considering perjury in sentencing does not implicate double jeopardy.

In *Ford,* the case relied upon in *Von Moos,* the trial court sentenced the defendant, and he was then released on bail. Two days later the defendant was returned to court, his sentence was vacated, and he was resentenced to correct an error that the judge perceived in the sentence and to "conform to [the judge's] original intent." *Ford,* 632 F.2d at 1379–80. In response to the defendant's double jeopardy argument, the Ninth Circuit held that "the mere pronouncement of the first sentence [did not] place[ ] Armstrong in jeopardy so as to make that first sentence uncorrectable.... [A] district judge may promptly act to correct a misspoken sentence when the defendant has not started serving that sentence." *Ford,* 632 F.2d at 1380. Relying upon *Von Moos,* Avelar argues that jeopardy does not attach in the punishment context until the sentence has been executed.

Avelar's reliance upon *Von Moos* is misplaced. The cases upon which *Von Moos* relies, including *Ford,* are no longer sound law. *See U.S. v. Groceman,* 882 F.Supp. 976 (E.D.Wash.1995). Furthermore, the Ninth Circuit has recently rejected *Von Moos* and *Ford* in a case that is factually similar to Avelar's. In *U.S. v. Faber,* 57 F.3d 873 (9th

Cir.1995), the defendant entered a conditional plea of guilty to conspiracy in February. In March, the defendant executed a Settlement Agreement in a civil forfeiture proceeding that had been instituted along with the criminal charge. The defendant then challenged the court's attempt to sentence him on the criminal charge because jeopardy attached first in the civil proceeding. The court held that jeopardy attached when the defendant entered his guilty plea and that the question of whether the civil forfeiture proceeding violated double jeopardy was not before it. In a footnote, the court stated:

> Faber contends that jeopardy does not attach in a criminal case until a defendant begins serving the sentence imposed. Faber cites [*Von Moos* ] for support. That case and the Ninth Circuit case upon which it relies,[*Ford* ], dealt with the issue of double punishment in the context of deciding whether a convicted criminal could be resentenced and given additional punishment once the original sentence had begun. These cases are not applicable here.

*Faber,* 57 F.3d at 874. The First Circuit also rejected a similar argument in *U.S. v. Pierce,* 60 F.3d 886 (1st Cir.1995).

> Although he does not say so explicitly, Pierce implies that a criminal defendant should have the right to withhold objection to a forbidden successive prosecution and raise a double jeopardy argument only in the event that the second prosecution leads to a prior and less severe punishment than that meted out in the original case. Put another way, a defendant ought to have the option to endure an unconstitutional second trial in the hope that it will both conclude first and lead to a more lenient punishment than that eventually imposed in the first trial, and then to object to the punishment imposed in the first trial on double jeopardy grounds. We cannot locate any authority to support this proposition, and we reject it out of hand.

> The Double Jeopardy Clause is a shield against the oppression inherent in a duplicative, punitive proceeding; it is not a tool by which a defendant can avoid the conse-

quences of the proceeding in which jeopardy first attached.

*Pierce* at 890.

■ We reject Avelar's bifurcated view of the attachment of jeopardy. We hold that a distinction between punishment and prosecution with regard to the attachment of jeopardy such as that suggested by *Von Moos* is not warranted or necessary. It would be unworkable, and would not provide any more protection for defendants. The initiation of criminal proceedings, by necessity, occurs at some point in time before the imposition of punishment in those proceedings. Thus, jeopardy will attach first in the prosecution context. Any punishment that would be barred by the attachment of jeopardy in the punishment context, would already be barred by the attachment of jeopardy in the prosecution context. A defendant can receive additional protection under the rule suggested by Avelar only by acquiescing in an impermissible prosecution in the hope of obtaining a more lenient punishment.

■ The propriety of both punishments and prosecutions must be considered in relation to the point where jeopardy first attached. The double jeopardy clause "protect[s] an individual from being subjected to the hazards of trial and possible conviction *more than once* for an alleged offense." *U.S. v. Pierce*, 60 F.3d 886, 889 (1st Cir.1995) (quoting *Green v. U.S.*, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (emphasis supplied)). In the context of punishments meted out in different proceedings, only the second proceeding is constitutionally vulnerable. *See, e.g., Pierce, supra; U.S. v. Idowu,* 74 F.3d 387 (2nd Cir.1996); *U.S. v. Faber* 57 F.3d 873 (9th Cir.1995); *U.S. v. Barton,* 46 F.3d 51 (9th Cir.1995); *U.S. v. Groceman,* 882 F.Supp. 976 (E.D.Wash.1995); *Petition of Maxfield,* 81 Wash.App. 705, 915 P.2d 1134, 1136 (1996).

■ We hold that jeopardy attached in this case during the criminal proceedings against Avelar when the jury was sworn in his *first* trial. Since jeopardy attached first in the criminal proceedings, we need not decide whether a subsequent civil tax proceeding implicated double jeopardy. Avelar *may* have been able to raise double jeopardy as a defense to the tax proceedings as the defendants successfully did in *Dep't of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). He chose not to do so. Avelar's second criminal conviction was upheld in *Avelar II.* He cannot now challenge the execution of the sentence imposed pursuant to that conviction based upon potentially improper tax proceedings that he allowed to continue. The double jeopardy clause protects individuals from the hazard, inconvenience, and expense of multiple prosecutions and punishments. The double jeopardy clause does not protect the defendant who endures multiple prosecutions in the hope of playing one punishment off against another.

## II.

### RULE 34 MOTION FOR NEW TRIAL

■ Avelar argues that he is entitled to a new trial because the state failed to disclose the illegal acts of John Nunez, one of the principal witnesses against Avelar, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Nunez was a police informant who helped to set up the police operation that resulted in Avelar's conviction. Nunez was a confidential informant and not a police officer during the investigation of the case against Avelar, however, he subsequently became a police officer, and was a police officer at the time of Avelar's second trial. Following Avelar's conviction, Nunez was convicted of a variety of criminal activity relating to his work on the drug task force.[3] Nunez's criminal activity took place while he was a police officer and prior to Avelar's second trial. Avelar contends that the prosecution should have disclosed Nunez's criminal activity because it would have assisted Avelar's counsel in undermining Nunez's credibility at trial. Based upon the newly discovered evidence of Nunez's criminal activity, Avelar argues that he is entitled to a new trial under I.C.R. 34. We disagree.

---

3. Nunez's appeal from his conviction is currently before this Court.

██ "The duty of disclosure enunciated in *Brady* is an obligation of not just the individual prosecutor assigned to the case, but of all the government agents having a significant role in investigating and prosecuting the offense." *State v. Gardner*, 126 Idaho 428, 433, 885 P.2d 1144, 1149 (Ct.App. 1994). However, a prosecutor is not required to disclose "evidence the prosecutor does not possess or evidence of which the prosecutor could not reasonably be imputed to have knowledge or control." *U.S. v. MacFarlane*, 759 F.Supp. 1163, 1168 (W.D.Pa.1991). The trial judge found that the prosecution was not actually aware of Nunez's illegal activity, and this finding is not challenged on appeal. Consequently, Avelar must show that the knowledge of Nunez's activities can be imputed to the prosecution.

We hold that knowledge of Nunez's criminal activity may not be imputed to the prosecution on the facts of this case. Although Nunez was subsequently hired as a police officer, he was merely a paid informant at the time of the investigation, and was acting in that role when he testified at trial. Possession of information held in the minds of government witnesses is generally not imputed to the prosecution unless that information was discovered by police or prosecutors. *See U.S. v. Wilson*, 116 F.3d 1066, 1082 (5th Cir.1997)(police not required to investigate government witness' mental state). Consequently, any information that Nunez possessed about his own ongoing criminal activity can not be imputed to the prosecution, and the prosecution did not suppress information in violation of *Brady*.

The district court properly denied Avelar's I.C.R. 34 motion for a new trial.

### III.

#### RULE 48 MOTION

██ Avelar moved to dismiss this action pursuant to I.C.R. 48(a)(2) based upon his good behavior during the lengthy appellate process and the unforgiving immigration consequences of the conviction. Idaho Criminal Rule 48 provides

(a) **Dismissal on motion and notice.** The court, on notice to all parties, may dismiss a criminal action upon its own motion or upon motion of any party upon either of the following grounds:

(1) For unnecessary delay in presenting the charge to the grand jury or if an information is not filed within the time period prescribed by Rule 7(f) of these rules, or for unnecessary delay in bringing the defendant to trial, or

(2) For any other reason, the court concludes that such dismissal will serve the ends of justice and the effective administration of the court's business.

I.C.R. 48(a)(1)-(2).

██ On its face, I.C.R. 48(a)(2) has two requirements: (1) that dismissal serve "the ends of justice," and (2) that dismissal serve "the effective administration of the court's business." Avelar does not address how the effective administration of the court's business will be served by dismissing this case. Indeed he acknowledges that a dismissal under this rule would not bar reprosecution. I.C.R. 48(c). Avelar instead focuses on the harsh personal consequences of the conviction. Rule 48(a)(2) is not the vehicle for such a challenge, particularly following an unsuccessful appeal. Although Rule 48 does not contain an explicit time limitation, the language indicates at least an implicit limitation. The likelihood that a dismissal will serve the effective administration of the court's business decreases as the case proceeds to a final judgment and disappears following an unsuccessful appeal.

The district court correctly denied Avelar's Rule 48 motion to dismiss.

### CONCLUSION

The district court's denial of Avelar's motion to dismiss or, in the alternative, for a new trial is affirmed.

Chief Justice TROUT, Justices SILAK, SCHROEDER and Justice, Pro tem, JOHNSON, CONCUR.