**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47333**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: December 10, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JUSTIN DANIEL BOWMAN, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Judgment of conviction for attempted strangulation and possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Justin Daniel Bowman appeals from his judgment of conviction for attempted strangulation, Idaho Code § 18-923, and possession of a controlled substance, I.C. § 37-2732(c)(1). We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2018, the State charged Bowman with possession of methamphetamine, domestic assault (later amended to misdemeanor telephone harassment), and two counts of attempted strangulation. The State also alleged Bowman was a persistent violator. Bowman was appointed counsel from the public defender's office, pled not guilty, and proceeded to trial on the strangulation and telephone harassment charges.

1

During the first day of trial on May 22, 2019, Bowman's trial counsel began but did not complete her cross-examination of the State's primary witness, the alleged victim. Before the second day of trial, Bowman's trial counsel's husband passed away unexpectedly. On the morning of May 23, the district court convened a hearing at which the prosecutor and another public defender appeared on behalf of Bowman in lieu of his trial counsel. Bowman was not present.

At that hearing, Bowman's substitute counsel from the public defender's office indicated that she had "no information or knowledge" of Bowman's case; the prosecutor represented the parties jointly stipulated to a mistrial; and Bowman's substitute counsel affirmatively stated "no objection" when the district court stated its intention to declare a mistrial. In Bowman's absence, the court declared a mistrial, stating:

> I will note that [Bowman] is not present. There is no time to bring him up. It's a scheduling order, and it's an issue that's beyond anybody's control.
> So I will find that pursuant to Idaho Criminal Rule 29.1, this trial is--a mistrial is appropriate. [Bowman's trial counsel's] husband has passed away, and there's clearly no way that anyone could step in to proceed in this trial.

Subsequently, the court also stated Bowman "was not present due to the fact that there were a number of issues that all of the courts were trying to accommodate with respect to the Public Defender's Office that morning."

Several days after the district court had already declared a mistrial, Bowman--acting pro se--submitted a motion for mistrial. In that motion, Bowman alleged various purported pretrial and trial errors, although he did not mention the passing of his trial counsel's husband. The court did not address Bowman's pro se motion for a mistrial; rather, it held a scheduling hearing on June 10. Both Bowman and his trial counsel appeared at the hearing. At that time, the court reset Bowman's trial for October 8, and neither Bowman nor his trial counsel objected to this setting.

Then, on June 21, Bowman (again acting pro se) sent the district court a letter asserting for the first time his statutory right to a speedy trial under I.C. § 19-3501. In that letter, Bowman also asserted that, if the court "had informed [him] of the situation" before declaring a mistrial, he would have asserted his right to proceed pro se with the trial. He claimed the court "waived" this right "without his consent" and thereby violated his Sixth Amendment right to represent himself.

2

In response to Bowman's letter, Bowman's trial counsel requested a status conference. At that conference, the district court addressed Bowman's speedy trial rights. The court found that July 13 was the final day of the sixth-month limit under I.C. § 19-3501 for Bowman's trial;[1] the passing of Bowman's trial counsel's husband was a "neutral" factor attributable to neither party; the delay of Bowman's trial from July 13 to October 8 was an "intermediate" rather than a "protracted" delay; Bowman delayed asserting his speedy trial right; Bowman would likely remain incarcerated until the trial; and having the trial before July 13 would be "impossible." Based on these findings, the court implicitly concluded Bowman's statutory speedy trial right had not been violated, and the court then rescheduled Bowman's trial from October 8 to August 27, the court's earliest available trial date.

Next, the district court noted Bowman had sent three letters to the court "expressing dissatisfaction" with his trial counsel. The court inquired, "Is it your desire to proceed pro se without counsel?" to which Bowman responded, "No, I do not want to proceed pro se." Nevertheless, Bowman then spoke on his own behalf and moved to dismiss the case, asserting once again that he would have proceeded pro se in lieu of a mistrial and that double jeopardy barred a subsequent trial:

> I hereby move to dismiss the case with prejudice as jeopardy has attached and a mistrial was declared ex parte in violation of my constitutional rights through due process, my notice to be present or to be heard, and my Sixth Amendment right to representation, be it attorney or self.
> . . . .
> [G]iven the nature of the circumstances that day, and the proper course of action would have been to bring me to court--I was ready and down the hall--and inform me of the situation and ask me how I wished to proceed. My choices would have been, one, to proceed pro se that day with my trial, which I assert is, in fact, the course of action I would have chosen.

Addressing Bowman's comments about double jeopardy, the district court noted it declared a mistrial under Idaho Criminal Rule 29.1 because proceeding with the trial in conformity with the law would have been impossible. Further, the court noted both the State and Bowman's substitute counsel stipulated to the mistrial. The court found that if it had not declared a mistrial, Bowman would have had ineffective assistance of counsel. In particular, the court noted that "we were in the middle of the cross-examination of the State's primary witness";

---

[1]     As Bowman notes in his opening brief, the State actually filed the information on January 14, 2019, and the sixth-month limitation lapsed on July 14.

3

"there were numerous complicated and intricate [evidentiary] arguments," two of which the court had taken under advisement until "the time [the] evidence was offered"; Bowman "would have no idea on how to get that evidence in"; and Bowman "would not have been able to review any of the exhibits ahead of time, would not have had access to the exhibits, and could not have called his own witnesses."

Finally, the district court found Bowman's claim that he would have chosen to proceed with the trial pro se was "not made in good faith." In support of this finding, the court noted that on the morning of the first day of trial Bowman had an "outburst" while demanding the court postpone the trial; Bowman moved pro se for a mistrial after the court had already declared a mistrial; Bowman had not previously indicated his desire to proceed pro se; Bowman was "emphatic" he did not want to proceed pro se to trial when the court inquired; and any error in failing to ensure Bowman's presence when the court declared a mistrial was harmless.

After the district court rejected Bowman's pro se challenges, Bowman entered an *Alford*[2] plea to one count of attempted strangulation and pled guilty to possession of a controlled substance, and the State agreed to dismiss the remaining charges and the persistent violator enhancement. Bowman reserved the right to appeal the court's denial of his pro se motions to dismiss the case.

## II.

## ANALYSIS

### A.  Statutory Speedy Trial Right

Bowman challenges the district court's denial of his pro se motion to dismiss the charges against him because the delay in bringing him to trial violated his speedy trial right under I.C. § 19-3501.[3] Whether there was an infringement of a defendant's right to a speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933

---

[2]     *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

[3]     On appeal, Bowman does not assert his constitutional speedy trial rights were violated. *See State v. Lopez*, 144 Idaho 349, 352, 160 P.3d 1284, 1287 (Ct. App. 2007) (noting both Sixth Amendment to United States Constitution and Article 1, Section 13 of Idaho Constitution guarantee to criminal defendant's right to speedy trial).

(2000). We defer to the trial court's findings of fact if they are supported by substantial and competent evidence. *Id.* We exercise free review, however, of the trial court's conclusions of law. *Id.* Determining whether good cause warranted the delay of the defendant's trial is a matter initially within the trial court's discretion. *State v. Young*, 136 Idaho 113, 116, 29 P.3d 949, 952 (2001). On appeal, the appellate court independently reviews the trial court's exercise of discretion. *Id.*

Idaho Code Section 19-3501 supplements a criminal defendant's constitutional protections to a speedy trial by setting a six-month time limit within which a defendant must be brought to trial. The statute provides in relevant part:

> The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
> . . . .
> (2) If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the information is filed with the court.

I.C. § 19-3501(2).

In determining whether a defendant's speedy trial right under I.C. § 19-3501 has been violated, the trial court must first determine whether the defendant waived his statutory right to a speedy trial by requesting the trial's postponement. *See id.* (providing limitation only applies if defendant's "trial has not been postponed upon his request"). The Idaho Supreme Court has previously held that if a defendant's request to postpone the trial causes the court to reschedule the trial beyond I.C. § 19-3501's six-month limit, then that request waives the defendant's statutory speedy trial right. *See State v. Lundquist*, 134 Idaho 831, 833-34, 11 P.3d 27, 29-30 (2000) (noting defendant waived speedy trial right to allow for substitution of his counsel).[4]

---

[4] The decision in *State v. Lundquist*, 134 Idaho 831, 833, 11 P.3d 27, 29 (2000), actually suggests *any* request by the defendant to postpone the trial is a waiver of his speedy trial rights, stating that "once a trial has been postponed, the six-month statutory period no longer applies." Subsequently, however, the Idaho Supreme Court in *State v. Young*, 136 Idaho 113, 116 n.2, 29 P.3d 949, 952 n.2 (2001), clarified that *Lundquist* stands only for the proposition that a defendant waives his statutory speedy trial right when his request for a postponement causes the trial to be scheduled beyond I.C. § 19-3501's six-month limit. The Court indicated that "whether the protection granted by Idaho Code § 19-3501 is waived *any* time the trial is postponed at the defendant's request"--even if that request is not the reason for rescheduling the trial beyond the six-month limitation--is an issue which remains unresolved. *Young*, 136 Idaho at 116 n.2, 29 P.3d at 952 n.2 (emphasis added).

If the defendant has not waived his statutory speedy trial right, then the trial court must determine whether good cause exists for not bringing the defendant to trial within I.C. § 19-3501's six-month limit. The State bears the burden of showing good cause. *Clark*, 135 Idaho at 260, 16 P.3d at 936. The analysis of whether good cause exists focuses on the reason for the delay, i.e., whether the delay is prompted by "a substantial reason that rises to the level of a legal excuse for the delay." *Id.*; *see also Young*, 136 Idaho at 116, 29 P.3d at 952 (same). If the reason for the trial's delay is "well-defined" and "on its face" clearly does or does not constitute good cause, then no further analysis is necessary. *State v. Jacobson*, 153 Idaho 377, 380, 283 P.3d 124, 127 (Ct. App. 2012) (concluding no occasion to consider additional factors if reason for delay is clear).

Only in "close cases" does the trial court need to consider the additional factors identified in *Barker v. Wingo*, 407 U.S. 514 (1972), for analyzing speedy trial rights. *Jacobson*, 153 Idaho at 380, 283 P.3d at 127. These factors include the length of the delay, the defendant's assertion of his speedy trial rights, and any prejudice to the defendant. *Barker*, 407 U.S. at 530 (identifying factors). A case is close if, for example, multiple reasons for the delay are attributable to both the State and the defendant or the sufficiency of the reason for good cause is genuinely subject to dispute. *Jacobson*, 153 Idaho at 380, 283 P.3d at 127.

On appeal, Bowman is mindful that his substitute counsel stipulated to the mistrial which caused the trial to be rescheduled beyond the sixth-month limit in I.C. § 19-3501. Nonetheless, Bowman argues on appeal that the State failed to establish good cause for the delay. In response, the State argues Bowman invited the error when his substitute counsel stipulated to the mistrial.

We agree with the State. The doctrine of invited error applies to estop a party from asserting an error when that party's conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting the trial court to take action from later challenging that decision on appeal. *State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020). In short, invited errors are not reversible. *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996).

In this case, Bowman's substitute counsel, who acted on Bowman's behalf after his trial counsel's husband passed away, stipulated to the mistrial. This stipulation in turn caused the district court to reset the trial for October 8--a date which was after the expiration of the six-

6

month limit in I.C. § 19-3501 but to which neither Bowman's trial counsel nor Bowman personally objected. On appeal, Bowman neither argues nor provides any supporting authority for the proposition that his substitute counsel lacked the authority to stipulate to the mistrial on his behalf. Rather, Bowman concedes he stipulated to the mistrial. That stipulation was a waiver of Bowman's statutory speedy trial right. Accordingly, we hold that the invited error doctrine estops Bowman from asserting on appeal that this right was violated.

Because Bowman waived his speedy trial right, we do not need to address either his argument that the State failed to establish good cause for the delay or the remaining *Barker* factors. Regardless, the district court did not err by concluding Bowman's statutory speedy trial right was not violated under the circumstances. In particular, Bowman's demand on the first day of trial that the court postpone the trial, his pro se motion for a mistrial filed after the court had already declared a mistrial per his stipulation, his failure to object to the court resetting the trial for a date after the expiration of the six-month limit in I.C. § 19-3501, and his failure to assert his speedy trial rights until after this resetting are all factors weighing against concluding Bowman's statutory right to a speedy trial was violated. *See Barker*, 407 U.S. at 530 (identifying defendant's assertion of his speedy trial rights as factor in determining violation of speedy trial rights).

## B.     Double Jeopardy

Bowman argues the district court erred in denying his pro se motion to dismiss because double jeopardy barred any subsequent trial of the charges against him. The Double Jeopardy Clauses in the Idaho and federal Constitutions prohibit putting an individual in jeopardy twice for the same crime. *State v. Manley*, 142 Idaho 338, 343, 127 P.3d 954, 959 (2005); *see also Ash v. State*, 162 Idaho 535, 541 n.3, 400 P.3d 623, 629 n.3 (Ct. App. 20017) (noting Idaho courts have consistently held Idaho and federal double jeopardy protections are co-extensive). "Double jeopardy protection is triggered by the attachment of jeopardy." *State v Avelar*, 132 Idaho 775, 778, 979 P.2d 648, 651 (1999). Jeopardy attaches when the jury is sworn to hear the criminal trial. *Id.*

The prohibition against double jeopardy protects an individual against multiple prosecutions for the same crime. *Id.* This protection ensures the State does not repeatedly attempt to convict an individual. *Manley*, 142 Idaho at 343, 127 P.3d at 959. Although double jeopardy protects against repeated prosecutions for the same crime, a criminal defendant is not

7

necessarily "entitled to go free every time a trial fails to end in a final judgment." *Id.* at 344, 127 P.3d at 960. Rather, a criminal defendant may be retried without double jeopardy consequences if the trial court prematurely terminates the first trial due to "manifest necessity"--even if the defendant does not consent to the mistrial. *Id.*

"Manifest necessity" means the trial court declared a mistrial because a "sufficiently compelling reason" obstructed "a full and fair adjudication of the case." *Id.* (quoting *State v. Stevens*, 126 Idaho 822, 826, 892 P.2d 889, 893 (1995) (identifying factors for consideration). An example of a "sufficiently compelling reason" includes "some procedural error or other problem" serious enough to outweigh the defendant's interest in obtaining a final resolution of the charges against him. *Id.* Determining whether manifest necessity exists to terminate a trial is not subject to a bright-line rule; rather, it is based on the consideration of the facts in each case. *Id.* Such factors may include whether "any less drastic alternative" could have adequately resolved the problem or error precipitating the mistrial; whether continuation of the trial would have necessarily resulted in a reversal on appeal; whether the prosecution engaged in bad faith or oppressive conduct; whether a mistrial was in the defendant's interest; and whether and to what extent a second trial would prejudice the defendant. *Id.* Also, "if a trial judge acts irrationally or irresponsibly, the mistrial declaration cannot be condoned." *Manley*, 142 Idaho at 345, 127 P.3d at 961 (quotations omitted).

Whether to declare a mistrial and whether manifest necessity exists is within the trial court's discretion. *Id.* at 345, 127 P.3d at 961. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

On appeal, Bowman argues "he had a right to be present [when the district court declared the mistrial] in order to exercise his right to proceed pro se, and the failure to have him present to exercise that right negates any manifest necessity for the mistrial." "Broadly speaking, a defendant's right to be present in the courtroom at each stage of his trial [is] a basic right guaranteed by the Sixth Amendment." *State v. Carver*, 94 Idaho 677, 679, 496 P.2d 676, 678 (1972) (quotations omitted). The right is related to ensuring a fair trial by providing the

8

defendant with first-hand knowledge of the actions leading to the trial's eventual outcome. *Id.*; *see also State v. Dunlap*, 155 Idaho 345, 368, 313 P.3d 1, 24 (2013) ("[T]he right to be present at all proceedings is related to ensuring a fair hearing."). The defendant has a due process right to be personally present whenever his presence has a reasonably substantial relation to his opportunity to defend against the charge. *Dunlap*, 155 Idaho 368, 313 P.3d at 24. The right, however, is not absolute. *Id.* Rather, the right only guarantees the defendant's presence if the procedure is critical to the case's outcome and if his presence would contribute to the procedure's fairness. *Id.*; *see, e.g.*, *Carver*, 94 Idaho at 680, 496 P.2d at 679 (holding defendant had right to be present during voir dire of jury panel).

Bowman acknowledges no Idaho authority supports the proposition that he had a constitutional right to be present when the district court declared a mistrial. Further, Bowman acknowledges numerous jurisdictions have held a defendant does not have a right to be present when a mistrial is declared or to consent personally to a mistrial. Nonetheless, Bowman argues "his case should be the exception to the rule" because the mistrial did not involve "a strategic or tactical decision" to request a mistrial but implicated his "fundamental decision" to proceed pro se.

In support, Bowman relies on *State v. Hart*, 144 A.3d 609 (Md. 2016).[5] In that case, the jury sent a note to the trial court late in the evening after about three and a half hours of deliberation stating the jury was "split" on one count. *Id.* at 614. At that time, the defendant was experiencing medical problems and was en route to the hospital. *Id.* In the defendant's absence and over defense counsel's objection, the trial court took a partial verdict from the jury and declared a mistrial on the count which was the subject of the jury's note. *Id.* at 616. On appeal, the appellate court ruled that "the trial judge acted prematurely in determining that manifest necessity existed." *Id.* at 627. In particular, the appellate court noted that the jury had only been deliberating for approximately three and a half hours; the defendant was involuntarily absent and whether he would return to trial was unknown; there was no good reason the jury could not have returned for further proceedings; and the trial court failed to explore reasonable alternatives to declaring a mistrial. *Id.* at 627-28. Further, the appellate court reasoned that the defendant's

---

[5] Bowman also cites *Bishop v. State*, 335 S.E.2d 742 (Ga. Ct. App. 1985), in support. In that case, however, the appellate court held that double jeopardy did not bar a defendant's prosecution simply because the trial court did not declare the mistrial in his presence. *Id.* at 745. Accordingly, *Bishop* does not support Bowman's argument.

9

presence was important because "jurors upon seeing the defendant in court, might change their prior 'unequivocal' stances that led to the deadlock in the first place." *Id.* at 629 (quoting the intermediate appellate court).

This case is distinguishable from *Hart* in numerous respects. First, unlike the defense counsel in *Hart*, Bowman's substitute trial counsel neither objected to Bowman's absence nor to the mistrial. Second, the rationale in *Hart* for requiring a defendant's presence to declare a mistrial is inapplicable in this case. Unlike *Hart*, the district court did not declare a mistrial based on jury deadlock. Rather, the mistrial was based on circumstances having nothing to do with the jurors' view of Bowman. Third, Bowman's alternative to a mistrial--that he proceed pro se with the trial--was not reasonable. As the court explained, Bowman's pro se presentation would have been seriously hampered by numerous barriers including his lack of access to his evidence, his inability to coordinate and present witnesses, and the need to address complicated evidentiary issues.

We decline to adopt Bowman's assertion that his absence when the district court declared a mistrial violated his rights to be present or to represent himself or otherwise "negated" the manifest necessity for a mistrial. The death of Bowman's trial counsel's husband before the second day of trial was a sufficiently compelling reason to obstruct a full and fair adjudication of the case and constituted manifest necessity for a mistrial. *See Manley*, 142 Idaho at 344, 127 P.3d at 960 (defining manifest necessity). The court declared the mistrial in the interest of Bowman having effective assistance of counsel; the prosecution did not engage in bad faith or oppressive conduct; there was no less drastic reasonable alternative to continue the trial; and Bowman fails to identify any significant prejudice as a result of a second trial. *Id.* (identifying factors for consideration in determining manifest necessity). Accordingly, we hold that manifest necessity warranted the mistrial, and thus double jeopardy did not bar a second trial.

### III.

### CONCLUSION

We hold that the district court did not err by denying Bowman's pro se motions to dismiss because Bowman's statutory right to a speedy trial under I.C. § 19-3501 was not violated and manifest necessity supported the mistrial. Therefore, double jeopardy did not bar a second trial. Accordingly, Bowman's judgment of conviction is affirmed.

Judge GRATTON and Judge LORELLO **CONCUR**.

10