127 P.3d 954

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Joseph Allen MANLEY, Defendant–Appellant.**

No. 31458.

Supreme Court of Idaho,
Coeur d'Alene, October 2005 Term.

Dec. 20, 2005.

**340**

Jonathan W. Cottrell, Sandpoint, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

TROUT, Justice.

Appellant Joseph Allen Manley has requested review of the district court's sua sponte declaration of a mistrial based on manifest necessity. After the mistrial was declared, Manley's motion to dismiss with prejudice on the grounds that any subsequent trial would be barred by double jeopardy was denied. Subsequently, the Respondent State of Idaho asked for a dismissal

---

1. The attorney representing Manley on appeal is not the same attorney who represented Manley at trial.

because new lab results had weakened the State's case against Manley. The district court granted the State's motion and dismissed the case without prejudice. The Court of Appeals upheld the district court's declaration of a mistrial and this Court granted review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2001, Manley and his brother, Chris, became intoxicated and began fighting at a neighbor's house. Eventually, the two returned to their father's home, where the fighting continued for a time. Manley claims he eventually went into the bathroom to get away from Chris' roughhousing, took off his shoes, laid down on the floor and either fell asleep or passed out. At approximately 11:45 that evening, Chris was shot in the left shoulder as he was sitting on the living room couch. Based on the trajectory of the bullet, if the rifle had been fired by another person, the assailant would have to have fired upward at Chris while crouching or lying on the floor beneath him. Chris, bleeding profusely, made his way to a neighbor's house, but died shortly after the police arrived, without having said a word. The police followed Chris' bloody trail back to the Manley home, found Manley in the bathroom, and removed him from the home by walking him through the blood-spattered living room. A small amount of Chris' blood was later found on Manley's pant cuffs. Manley was arrested and charged with second degree murder.

At trial, the State relied on two primary pieces of evidence to show Manley murdered his brother. The first was a statement allegedly made by Manley when first confronted by the police in the bathroom: "I am not mad, man. I didn't kill my own brother, man." This statement was presented by the State to show Manley was aware of his brother's death before it had been mentioned by the police. Manley's attorney[1] successfully impeached the investigating officer, forcing the State to acknowledge in front of trial.

the jury that such a statement had not been made. The second piece of evidence was the bloodstains found on the cuff of Manley's pants. One of the State's experts testified that the stains resulted from blood splattering from Chris' body onto Manley, indicating Manley was present during the shooting. After the State rested, Manley's attorney delivered his opening statement, during which he had to excuse himself twice to the jury. Once he stated, "I'm not sure how well [Manley's father will] hold up but he'll tell you a few little things about their relationship—excuse me. I'm from a family of five boys and I have three sons so I'm really into this case. Sorry." Excusing himself again, he said, "I gotta have a cup of water. Sorry." Manley's attorney then attempted to introduce five exhibits to rebut the State's expert about the blood spatter. Outside the presence of the jury, the district court excluded three of these exhibits. In doing so, the district court questioned whether Manley's attorney had purposefully waited until the State's expert had been excused before introducing the exhibits, to which Manley's attorney asked, "Why are you mad at me, Your Honor?" The judge denied being angry and made another evidentiary ruling against Manley. The following discussion then took place:

DEFENSE COUNSEL: I know about your dislike for me because I'm supportive of [a judicial candidate running against the trial judge].

THE COURT: Mr. Williams—

DEFENSE COUNSEL: And I resent what you're doing here. You're just—you're just—and I'm just starting my part of the case and you're doing this—this to me. God help me if I don't have a heart attack over it. I need a little time to get recomposed so I can try to defend this young man as he deserves to be.

The district court then took a fifteen minute recess. When the jury returned to the courtroom, the district court declared a mistrial sua sponte without consulting Manley, his attorney, or the State. It appears from the record, the district court did not explore any alternatives to declaring a mistrial. When the mistrial was announced, the district court stated it was based on a concern for the mental and physical health of Manley's attorney. In a subsequent written order, the district court pointed to defense counsel's "loss of control of his emotions in his opening statement," his accusation that the district judge was biased against him, and his remark "God help me if I don't have a heart attack over it," as support for the court's concern for defense counsel's physical and mental health.

Manley moved to dismiss the murder charge, claiming the mistrial order was not justified and that any retrial would be barred by the constitutional guarantee against double jeopardy. In response to Manley's motion to dismiss, the district court also identified in the written order various circumstances it concluded demonstrated Manley's attorney was ineffective and stated it declared the mistrial to preserve Manley's rights. The district court denied Manley's motion to dismiss. The State then moved to dismiss with prejudice on double jeopardy grounds, but this motion was denied, as well. The district court set a new trial date. A week before the new trial was to begin, the State again moved to dismiss, as new lab results had weakened the State's case against Manley by contradicting their expert's earlier blood spatter testimony. A second expert had concluded the stains on Manley's pants did not show Manley was present at the shooting. The district court granted the motion to dismiss, but did so without prejudice so the charges could be refiled.

Manley appealed and the case was assigned to the Court of Appeals. The Court of Appeals ruled Manley's double jeopardy claim was ripe for review and was not mooted by the district court's subsequent dismissal of the case without prejudice, but ultimately concluded the district court had not abused its discretion in declaring the mistrial and affirmed that decision. This Court granted Manley's Petition for Review.

## II. STANDARD OF REVIEW

 While this Court gives serious consideration to the views of the Court of Appeals when considering a case on review from that

court, this Court reviews the district court's decisions directly. *State v. Rogers,* 140 Idaho 223, 226, 91 P.3d 1127, 1130 (2004). This Court is not merely reviewing the correctness of the Court of Appeals' decision, but is hearing the matter as if the case were on direct appeal from the district court's decision. *Id.* (citations omitted).

■■ The decision to declare a mistrial is within the discretion of the district court, and such a determination will only be reversed when that discretion has been abused. *State v. Talmage,* 104 Idaho 249, 254, 658 P.2d 920, 925 (1983). In determining whether the district court abused its discretion, the reviewing court considers the following: (1) whether the district court correctly perceived that the issue was one of discretion; (2) whether the district court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the district court reached its decision by an exercise of reason. *Clark v. Klein,* 137 Idaho 154, 156, 45 P.3d 810, 812 (2002).

■ In contrast, the justiciability issues of ripeness and mootness may be freely reviewed. *See Lake v. Newcomb,* 140 Idaho 190, 193, 90 P.3d 1272, 1275 (Ct.App.2004) ("Mootness is an issue of law subject to our free review."); *see also Washington Legal Found. v. Legal Found. of Washington,* 271 F.3d 835, 850 (9th Cir.2001) (noting appellate court must examine sua sponte whether the dispute out of which the appeal arose was ripe).

### III. DISCUSSION

The three key issues raised by this appeal are (1) whether Manley's double jeopardy claim is ripe for review; (2) whether Manley's double jeopardy claim is moot; and (3) whether the district court abused its discretion in declaring a mistrial based on manifest necessity.

### A. Ripeness

■ The ripeness doctrine concerns the timing of a suit and asks whether a case is brought too early. The purpose of the ripeness requirement is to prevent courts from

entangling themselves in purely abstract disagreements. *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Under the ripeness test in Idaho, a party must show (1) the case presents definite and concrete issues; (2) a real and substantial controversy exists (as opposed to hypothetical facts); and (3) there is a present need for adjudication. *Noh v. Cenarrusa,* 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002); *Miles v. Idaho Power Co.,* 116 Idaho 635, 642, 778 P.2d 757, 764 (1989). This Court has recognized that judicial review may be had where there is no need for further factual development:

No new facts would be introduced and the legal issues presented would be unchanged from the present challenge.... It is clear that this issue will be before us either now or in the future, and a declaration now of the various rights of the parties will certainly afford a relief from uncertainty and controversy in the future. "Since we are persuaded that 'we will be in no better position than we are now' to decide this question, we hold that it is presently ripe for adjudication."

*Miles v. Idaho Power Co.,* 116 Idaho 635, 643, 778 P.2d 757, 765 (1989) (quoting *Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978)); *see also Weldon v. Bonner County Tax Coalition,* 124 Idaho 31, 37, 855 P.2d 868, 874 (1993).

■ Manley's double jeopardy claim was clearly ripe when he filed his motion to dismiss, as jeopardy attached when the jury was empanelled for Manley's trial, *see State v. Stevens,* 126 Idaho 822, 825–26, 892 P.2d 889, 892–93 (1995); *Crist v. Bretz,* 437 U.S. 28, 37–38, 98 S.Ct. 2156, 2161–62, 57 L.Ed.2d 24 (1978), and the charges were still pending against him. The State does not argue Manley's double jeopardy claim was not ripe at that point, but instead contends the issue is no longer ripe for review because the charges against Manley have been dismissed.

■ Like all justiciability issues, a case must remain ripe through all stages of review. *See Regional Rail Reorganization Act Cases,* 419 U.S. 102, 139–40, 95 S.Ct. 335,

357, 42 L.Ed.2d 320 (1974). Manley's double jeopardy claim remains ripe for this Court's review today simply because the requirements of Idaho's three part test continue to be met. First, whether to allow further prosecution is a definite and concrete issue; it is clearly defined and based solely on the validity of the district court's declaration of a mistrial. Further factual developments will not aid the court in resolving the issue. In fact, the State has conceded the record has been fully developed and no new information could be added that would place a reviewing court in a better position to review the merits of Manley's claim. Second, a real and substantial controversy—as opposed to hypothetical facts—exists in this case. The facts giving rise to Manley's double jeopardy claim occurred prior to and when the district court announced the mistrial. There are no hypothetical facts that may or may not happen in the future that will affect whether the district court properly declared a mistrial based on manifest necessity.

Finally, there is a present need for adjudication because Manley's double jeopardy rights allegedly *have already been violated.* When the district court declared a mistrial, it prohibited that particular jury, a jury that had witnessed the State's concession regarding Manley's statements to the police, from returning a verdict. The right Manley seeks to protect goes to the heart of the constitutional prohibition of double jeopardy: if Manley is correct that the mistrial was wrongfully declared, he will have been denied his "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). Also, if the State chooses to prosecute Manley again, as it currently has every right to do, and review of this issue is presently withheld, Manley will be relegated to seeking a permissive interlocutory appeal pursuant to Idaho Appellate Rule 11(c) before trial. If such an appeal is not granted, Manley will be forced to sit through another trial, with all its attendant anxiety, expense, embarrassment, and then appeal the double jeopardy issue if convicted. *See Ohio v. Johnson,* 467 U.S. 493, 498–99, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425, 433 (1984). The present need for adjudication, coupled with the satisfaction of the first and second ripeness requirements, compels the conclusion that Manley's double jeopardy claim is ripe for review.

**B. Mootness**

 Generally, appellate review of an issue will be precluded where an issue is deemed moot. An issue is moot "if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief." *State v. Rogers,* 140 Idaho 223, 226, 91 P.3d 1127, 1130 (2004) (citing *Idaho Sch. for Equal Educ. Opportunity v. Idaho State Bd. of Educ.,* 128 Idaho 276, 281–282, 912 P.2d 644, 649 (1996)). Thus, an issue is moot "if a favorable judicial decision would not result in any relief or the party lacks a legally cognizable interest in the outcome." *Rogers,* 140 Idaho at 227, 91 P.3d at 1131 (citing *Murphy v. Hunt,* 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353, 356–57 (1982)). One exception to the application of the mootness doctrine occurs "when there is the possibility of collateral legal consequences imposed on the challenger." *Rogers,* 140 Idaho at 227, 91 P.3d at 1131 (citing *Butler v. State,* 129 Idaho 899, 901, 935 P.2d 162, 164 (1997)). Collateral legal · consequences in the double jeopardy context can best be understood when discussed in terms of the harms the double jeopardy prohibition seeks to prevent.

 The double jeopardy clauses in the Idaho and federal constitutions prohibit putting one in jeopardy twice for the same crime. *See* Idaho Const. art. I, § 13; U.S. Const. amend. V. This protection applies not only to multiple punishments, but also to multiple prosecutions for the same crimes. *State v. Avelar,* 132 Idaho 775, 778, 979 P.2d 648, 651 (1999); *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 567 (1993). This right to be free from multiple prosecutions "ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence." *Johnson,* 467 U.S. at 498–99, 104 S.Ct. at 2540, 81 L.Ed.2d at 433;

*Avelar,* 132 Idaho at 778, 979 P.2d at 651. If appellate review is not granted now, Manley may be forced to appeal only after a conviction. This is so because if Manley is recharged, any permissive interlocutory appeal may be denied; there is no procedure which *ensures* appellate review before a defendant endures a second trial. The double jeopardy protection from multiple prosecutions would be lost if Manley were forced to "run the gauntlet a second time" before his appeal of the mistrial declaration could be heard. *See Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651, 661 (1977). For these reasons, we find Manley's claim is not moot due to the collateral legal consequences exception.

## C. Validity of Mistrial Declaration

### 1. Manifest Necessity

■ While the double jeopardy clause protects against repeated convictions and prosecutions for the same crime, it does not mean that a criminal defendant is entitled to go free every time a trial fails to end in a final judgment. *Wade v. Hunter,* 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974, 977 (1949), *reh'g denied,* 337 U.S. 921, 69 S.Ct. 1152, 93 L.Ed. 1730 (1949). A criminal defendant may be retried if the first trial was prematurely terminated by the district court, without the defendant's consent, due to "manifest necessity." *United States v. Perez,* 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824). This is so because the defendant's valued right to have the trial completed by a particular jury "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade,* 336 U.S. at 689, 69 S.Ct. at 837, 93 L.Ed. at 978. In *State v. Stevens,* this Court quoted the following summary of the manifest necessity standard:

> The basic rule is that criminal actions may be terminated by a mistrial without double jeopardy consequences if there is a sufficiently compelling reason to do so, some procedural error or other problem obstructing a full and fair adjudication of the case which is serious enough to outweigh the interest of the defendant in obtaining a final resolution of the charges against him—what is commonly termed a "manifest necessity" or "legal necessity." The courts have generally declined to lay out any bright-line rule as to what constitutes "manifest necessity," but have based their decisions on the facts of each case, looking to such factors as whether the problem could be adequately resolved by any less drastic alternative action; whether it would necessarily have led to a reversal on appeal if the trial had continued and the defendant had been convicted; whether it reflected bad faith or oppressive conduct on the part of the prosecution; whether or not it had been declared in the interest of the defendant; and whether and to what extent the defendant would be prejudiced by a second trial. Since the trial judge is ordinarily in the best position to observe the circumstances which allegedly call for a mistrial, his or her judgment as to the necessity for a mistrial is commonly deferred to; but that judgment may be set aside if the reviewing court finds that the judge has abused this discretionary power, particularly where it appears that the judge has not "scrupulously" exercised his or her discretion by making a full inquiry into all the pertinent circumstances and deliberately considering the options available . . . .

*State v. Stevens,* 126 Idaho 822, 826, 892 P.2d 889, 893 (1995) (quoting John E. Theuman, Annotation, *Former Jeopardy as Bar to Retrial of Criminal Defendant After Original Court's Sua Sponte Declaration of a Mistrial—State Cases,* 40 A.L.R.4th 741 (1985)).

In this case, the district court based its finding of manifest necessity for a mistrial on various grounds. First, the district judge announced in court that the mistrial was due to alleged physical and mental deficiencies of Manley's attorney. One month later, the district court identified its determination that Manley had not received effective assistance of counsel as an additional basis for the mistrial declaration.

### 2. Appellate Review

■ Due to the defendant's valued right to have his or her case decided by the seated jury, appellate courts have an obligation to

satisfy themselves that a trial judge exercised sound discretion in declaring a mistrial; thus, if a trial judge acts "irrationally or irresponsibly," the mistrial declaration cannot be condoned. *Arizona v. Washington,* 434 U.S. 497, 514, 98 S.Ct. 824, 835, 54 L.Ed.2d 717, 733 (1978). We review the district court's decision to declare a mistrial for an abuse of discretion.

■■■■ In this case, the district court properly determined the issue was one of discretion, as this Court has held that the decision whether to declare a mistrial and whether there is manifest necessity is within the district court's discretion. *State v. Kuzmichev,* 132 Idaho 536, 976 P.2d 462 (1999); *Stevens,* 126 Idaho at 826, 892 P.2d at 893. The district court did not, however, act within the outer boundaries of its discretion or consistently with the legal standards applicable to the specific choices available to it. In making the manifest necessity determination, a district court ought to obtain sufficient information to enable it to consider alternatives to a mistrial and give counsel a timely and meaningful opportunity to be heard on the subject. *Stevens,* 126 Idaho at 827, 892 P.2d at 894; *State v. Nab,* 113 Idaho 168, 171, 742 P.2d 423, 426 (Ct.App.1987); *United States v. Jorn,* 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543, 557 (1971). The district court surely could have taken steps to inform itself about defense counsel's mental and/or physical health; a continuance to allow time for such an investigation would be an appropriate alternative to a mistrial. Likewise, the district court could have considered a corrective jury instruction or appointing another attorney to assist defense counsel, as alternatives to a mistrial.

But even if the district court had adequately considered and then rejected alternatives, it clearly failed to give defense counsel an opportunity to be heard on the subject. The district court excused its failure to conduct a hearing by stating, "During the recess, I determined to announce the mistrial without discussing it with counsel or inviting arguments because of the volatile nature of the situation.... In the interest of maintaining civility and decorum I determined that a mistrial was to be declared sue sponte...."

We find this justification unpersuasive. There is no indication the situation during the recess was so "volatile" that the court could not have invited input from defense counsel regarding his emotional and physical health. Given that defense counsel's accusation of bias—the event which seems to have precipitated the mistrial declaration—was made outside the presence of the jury, the district court's claim that the situation was too volatile to allow for a hearing makes no sense. While the district court's interest in "civility and decorum" is certainly important, it cannot take priority over Manley's prerogative to at least have input regarding the right he was about to lose—the "valued right to have his trial completed by a particular tribunal." *Wade,* 336 U.S. at 689, 69 S.Ct. at 837, 93 L.Ed. at 978. In failing to give Manley a chance to be heard on the matter, the district court did not act consistently with the legal standards applicable to its sua sponte declaration of a mistrial.

Finally, we turn to the third prong of the abuse of discretion test: whether the district court reached its decision by an exercise of reason. With regards to the physical and emotional health of Manley's attorney as a basis for the mistrial, we have already determined the district court abused its discretion by not sufficiently considering its alternatives or affording Manley an opportunity to be heard on the issue. Our focus now is on the alternate grounds for the mistrial, which is the district court's conclusion Manley's attorney was ineffective.

■■■■ There is a strong presumption defense counsel's representation was within the wide range of professionally competent assistance. *State v. Hairston,* 133 Idaho 496, 510, 988 P.2d 1170, 1185 (1999) (citations omitted). "In assessing the reasonableness of attorney performance," this Court has cautioned, "judicial scrutiny must be highly deferential and every effort must 'be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *State v. Mathews,* 133 Idaho 300, 306, 986 P.2d 323, 329 (1999) (quoting *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct.

2052, 2065, 80 L.Ed.2d 674, 694 (1984)). Indeed, defense counsel's strategic or tactical decisions "will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation." *Dunlap v. State,* 141 Idaho 50, 60, 106 P.3d 376, 386 (2004) (quoting *Gilpin–Grubb v. State,* 138 Idaho 76, 81, 57 P.3d 787, 792 (2002)). Thus, while this Court gives deference to the district court's ultimate decision to declare a mistrial, we must at the same time, like the district court, resist the temptation of second-guessing counsel's tactical decisions when the mistrial was based, in part, on a finding of ineffective assistance of counsel.

In this case, many of the twenty-two Findings of Fact identified by the district court as demonstrating ineffective counsel illustrate the prohibited second-guessing of defense counsel's trial strategy or tactical decisions. For example, the district court found fault with Manley's attorney for failing to file a motion to suppress the "incriminating" statement made by Manley to the police. As already noted, this was a sound trial tactic, which resulted in the prosecutor acknowledging in front of the jury that a key witness' statement was wrong. Also, the district court was critical of defense counsel's failure to file formal discovery requests, which was of no moment, as the prosecutor had provided all the information needed to Manley's attorney. During oral argument, the State could point to no information Manley's attorney could have timely received, but did not, due to the lack of a formal discovery request. The district court censures Manley's attorney for not hiring a DNA expert, even though there was no question the blood found on Manley had come from his brother, so DNA was not at issue. The Finding that Manley's attorney failed to timely object when one of the State's experts testified the blood spatters on Manley's pant cuffs showed Manley was present at the shooting also does not demonstrate ineffective representation. In fact, Manley's attorney was prepared to rebut that testimony with evidence of similar blood spatter patterns made on certain objects *after* the shooting took place, but this evidence was excluded by the district court (arguably erroneously). In sum, there is simply no justification for finding ineffective assistance based on these facts. Even giving due regard to the district court's unique ability to evaluate the trial proceedings unfolding before it, and deferring to conclusions drawn from those proceedings, we are compelled to conclude, in this instance, there was no basis for declaring a mistrial based on ineffective assistance of Manley's attorney.

## IV. CONCLUSION

The district court's finding of manifest necessity for a mistrial was grounded on alleged physical and emotional deficiencies of Manley's attorney, together with a determination Manley's attorney was ineffective. Because the district court did not adequately consider alternatives or offer Manley an opportunity to be heard, and erroneously determined that Manley's attorney was ineffective, we find the district court abused its discretion in declaring a mistrial. Manley's motion to dismiss with prejudice should have been granted, as further prosecution of Manley for this crime is barred by the constitutional prohibition against double jeopardy.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.

