IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket Nos. 43850/43851

| STATE OF IDAHO, | ) | 2017 Unpublished Opinion No. 344 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 2, 2017 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DEVONTE CARTER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred M. Gibler, District Judge.

Orders denying motions to dismiss and judgment of conviction, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Devonte Carter appeals from his judgment of conviction entered upon his guilty plea to delivery of a controlled substance. Carter argues the district court erred in denying his motions to dismiss on double jeopardy grounds. Because a court does not violate double jeopardy when there is manifest necessity for a mistrial, the district court in this case properly determined the necessity for a mistrial after hearing arguments from both parties and considering alternatives to a mistrial. Therefore, we affirm the district court's decision.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Carter sold methamphetamine to a confidential informant, after which police obtained a warrant to search Carter's residence. When police executed the search warrant, Carter was at the residence with four other individuals. During the search, police discovered drug paraphernalia, scales, and packaging materials. Police also found three plastic bags containing

methamphetamine. One of these bags was recovered from the pocket of a pair of size 44 Dickies shorts, which were located next to Carter's social security card and identification card. Police confirmed the Dickies shorts were found in Carter's bedroom. Carter was arrested and charged with three crimes: two counts of delivering a controlled substance, methamphetamine, Idaho Code § 37-2732(a), and one count of possessing methamphetamine, I.C. § 37-2732(c)(1).

The case proceeded to a jury trial. After the presentation of evidence, the jury was unable to reach a consensus which resulted in a mistrial. While the drug case was pending, Carter was charged with intimidation of a witness, I.C. § 18-2604(3), based on his behavior involving a witness in the drug case. Following the mistrial in the drug case, based on the State's motion and despite Carter's objection, the district court joined the cases for purposes of trial. Both cases proceeded to one jury trial on all charges. During the second trial, the district court declared a mistrial because a prospective juror made a prejudicial statement during voir dire.

Following the two mistrials, Carter again stood trial on the joined cases. In the State's case-in-chief, a police officer testified about his execution of the search warrant. The officer explained how he discovered a bag of methamphetamine in the pocket of a pair of size 44 Dickies shorts. The Dickies shorts were located on a chair in the master bedroom of the home. The officer also discovered the social security card and Idaho identification card of Carter on the same chair. During cross-examination, defense counsel questioned the officer about the Dickies shorts found on the chair. After playing the video from the officer's body camera which showed Carter exiting the home, defense counsel presented the officer with the pair of shorts Carter was wearing at the time he was arrested. Counsel asked if the shorts appeared to be the same as the shorts Carter was wearing in the body camera video, and the officer responded, "I can't say that they're the same. They appear to be the same." The State objected to the questioning about these shorts since the officer could not establish the shorts were exactly the same pair and because the shorts were not yet admitted into evidence. Defense counsel explained, "That is correct, Your Honor. This is all foundational. We'll be linking it up later with another witness." When the district court allowed the cross-examination to continue regarding the shorts Carter was wearing, the questioning progressed as follows:

Q. And what size are these shorts?
A. 38.
Q. Thank you, sir. And, again, the size of the Dickies found on the chair were?
A. 44.

The next day, the State filed a motion in limine and request for discovery sanctions and to strike improperly introduced evidence in lieu of declaring a mistrial. The State's motion sought to bar Carter from introducing evidence and testimony from two non-disclosed witnesses and any evidence of the pair of size 38 shorts worn when Carter was arrested, since Carter failed to disclose the witnesses and the shorts prior to trial. The district court listened to arguments from both parties. The State argued the non-disclosure of witnesses was prejudicial and the surprise introduction of the shorts was improper. Carter responded that although the witnesses were not disclosed, they would be used to rebut testimony by a State witness and it was no surprise because the State knew about the witnesses from the previous trials. Carter argued the shorts, although undisclosed, were in jail property before the trial and, therefore, were not unfairly surprising to the State. Carter also asserted the size 38 shorts were necessary to contrast how the size 44 Dickies that contained methamphetamine were too unlike the size 38 shorts Carter wore at the time of arrest. Carter explained, "It's just a defense using the State's own evidence. These were shorts on the body of my client when he was arrested, they're in the video, and we're going to be able to link that up. That's a defense." The district court ruled Carter violated Idaho Criminal Rule 16 when he did not disclose the witnesses or the physical evidence he intended to present. However, based on the arguments of counsel, the district court concluded the witnesses and the pair of size 38 shorts were critical to Carter's defense and, therefore, it might infringe on Carter's right to a fair trial if the court excluded the evidence. As a result, the district court declared, "I am going to, at the request of the State, declare a mistrial in this case. I do it reluctantly because obviously we've got two prior ones, and here we are again. But it seems to me that both sides' interest in a fair trial trumps everything else."

Carter filed motions to dismiss all the charges against him on double jeopardy grounds. The district court denied the motions to dismiss. Carter then entered into a binding Idaho Criminal Rule 11 plea agreement with the State. Pursuant to the plea agreement, Carter pleaded guilty to one count of delivery of a controlled substance and the State dismissed the remaining drug charges and the witness intimidation case. As part of the plea agreement, Carter reserved his right to appeal the district court's orders denying his motions to dismiss. For delivery of a controlled substance, the district court sentenced Carter to term of twelve years, with four years determinate. Carter timely appeals.

## II.

## STANDARD OF REVIEW

We initially note that Carter does not claim the Double Jeopardy Clause of the Idaho Constitution provides any broader protection than that of the United States Constitution. Therefore, we will analyze this claim under the double jeopardy provisions of the United States Constitution. *See State v. Talavera*, 127 Idaho 700, 703, 905 P.2d 633, 636 (1995).

Whether a defendant's prosecution complies with the constitutional protection against being placed in jeopardy twice is a question of law over which we exercise free review. *State v. Santana*, 135 Idaho 58, 63, 14 P.3d 378, 383 (Ct. App. 2000). The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Clause affords a defendant three basic protections. It protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple criminal punishments for the same offense. *Schiro v. Farley*, 510 U.S. 222, 229 (1994); *State v. McKeeth*, 136 Idaho 619, 622, 38 P.3d 1275, 1278 (Ct. App. 2001).

## III.

## ANALYSIS

Carter argues the district court erred in denying his motions to dismiss on double jeopardy grounds. Specifically, Carter asserts the district court abused its discretion in declaring a mistrial for two reasons: first, the district court did not act consistently with applicable legal standards, and second, the court did not allow Carter an adequate opportunity to be heard.

### A. The District Court Did Not Err When It Declared a Mistrial

Carter argues the district court erred when it declared a mistrial because the court's actions were inconsistent with legal standards that apply to discovery violations. He further asserts that under the federal and state constitution, double jeopardy precludes a further retrial of the charges. We disagree.

Double jeopardy provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. However, the Supreme Court has been clear that the Double Jeopardy Clause does not mean a criminal defendant is free every time a trial fails to end in a final judgment. *Wade v. Hunter*, 336 U.S. 684, 688 (1949). The United States Supreme Court has ruled that a criminal defendant may be retried if the first trial

4

was prematurely terminated by the district court, without the defendant's consent, due to "manifest necessity." *United States v. Perez*, 22 U.S. 579, 580 (1824). The standard of manifest necessity in the context of double jeopardy was explained by the Idaho Supreme Court as follows:

> The basic rule is that criminal actions may be terminated by a mistrial without double jeopardy consequences if there is a sufficiently compelling reason to do so, some procedural error or other problem obstructing a full and fair adjudication of the case which is serious enough to outweigh the interest of the defendant in obtaining a final resolution of the charges against him-what is commonly termed a "manifest necessity" or "legal necessity." The courts have generally declined to lay out any bright-line rule as to what constitutes "manifest necessity," but have based their decisions on the facts of each case, looking to such factors as whether the problem could be adequately resolved by any less drastic alternative action; whether it would necessarily have led to a reversal on appeal if the trial had continued and the defendant had been convicted; whether it reflected bad faith or oppressive conduct on the part of the prosecution; whether or not it had been declared in the interest of the defendant; and whether and to what extent the defendant would be prejudiced by a second trial. Since the trial judge is ordinarily in the best position to observe the circumstances which allegedly call for a mistrial, his or her judgment as to the necessity for a mistrial is commonly deferred to; but that judgment may be set aside if the reviewing court finds that the judge has abused this discretionary power, particularly where it appears that the judge has not "scrupulously" exercised his or her discretion by making a full inquiry into all the pertinent circumstances and deliberately considering the options available.

*State v. Stevens*, 126 Idaho 822, 826, 892 P.2d 889, 893 (1995).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Here, the first and third prongs of the inquiry are not at issue. Therefore, the only issue here is whether the district court acted within the boundaries of its discretion and consistently with the applicable legal standards.

The district court acted within the boundaries of its discretion in declaring a mistrial. Although Carter argues the district court did not act consistently with applicable legal standards because it failed to consider alternative remedies for the discovery violation, we disagree. In *United States v. Jorn*, 400 U.S. 470 (1971), the United States Supreme Court ruled the trial court

5

did not exercise sound discretion in determining there was manifest necessity to declare a mistrial. *Id.* at 487. There, the trial court judge suspected that five witnesses had not been warned of their constitutional rights. *Id.* at 473. The judge did not hear arguments from the parties, but instead, questioned the prosecutor about the witnesses being advised of their constitutional rights. *Id.* Although the prosecutor indicated that the witnesses were informed of their rights, the trial judge declared the warnings were "probably inadequate" and ended the trial without any additional arguments from counsel. *Id.* The Supreme Court found the trial court abused its discretion since it abruptly discharged the jury, did not hear statements from the attorneys, and only partially examined the issue before cutting off all explanations and declaring a mistrial. *Id.* at 487.

Similarly, in *Stevens*, the Idaho Supreme Court found an abrupt mistrial ruling by the district court was improper because "the court *sua sponte* and without defense input or opportunity to deliberate and object declared a mistrial, dismissed the case and discharged the jury." *Stevens*, 126 Idaho at 827, 892 P.2d at 894. Likewise, in *State v. Manley*, 142 Idaho 338, 127 P.3d 954 (2005), the district court failed to act within the boundaries of its discretion because it did not consider alternatives to a mistrial or give counsel a meaningful opportunity to be heard on the subject. *Id.* at 345, 127 P.3d at 961. The trial court had instead declared a mistrial without consulting defense counsel or the State. *Id.* at 341, 127 P.3d at 957.

Here, the actions of the trial judge contrast with the behavior in the above cases. At trial, the State filed a motion in limine and request for discovery sanctions and to strike improperly introduced evidence in lieu of declaring a mistrial. Unlike the trial judges in *Jorn*, *Stevens*, and *Manley* who failed to consult with the State and defense counsel before declaring a mistrial, here the district court listened to arguments from the State and Carter on whether the evidence of the size 38 shorts and the two undisclosed witnesses should be excluded from the case. Throughout the arguments, the trial judge asked about the purpose of the evidence and why Carter failed to disclose the evidence to the State. Following the explanations from both parties, the district court described its need to weigh Carter's right to a fair trial with Carter's liberty interest in having favorable evidence presented to the jury. The court also considered the interest of both parties in adhering to Idaho Criminal Rules, as well as the role of withholding evidence that would be critical to Carter's case. Although alternatives were available to the court, such as excluding evidence and allowing witnesses to testify to the material facts, the district court

explained that the exclusion would be unfair to Carter and open up the potential for successful post-conviction relief claims against defense counsel. Therefore, unlike the judges in *Jorn*, *Stevens*, and *Manley*, the district court here heard arguments, contemplated the impact of various scenarios, and considered alternatives to a mistrial. Only after these considerations did the district court declare a mistrial in order to maintain Carter's and the State's interest in a fair trial. The judicial decision was reached by an exercise of reason and consistent with legal standards; the district court did not err in declaring a mistrial.

**B.      The District Court Allowed Carter the Opportunity to Be Heard**

Carter argues the district court did not give him an opportunity to comment on the appropriate remedy. We disagree. Carter provides no authority supporting his claim that the defendant, in addition to his defense counsel, has a constitutional, statutory, or procedural right to allocute on this issue before the district court makes a decision. Furthermore, *Manley* clarified what constitutes an "opportunity to be heard" when it made the following comment: "In making the manifest necessity determination, a district court ought to obtain sufficient information to enable it to consider alternatives to a mistrial and give counsel a timely and meaningful opportunity to be heard on the subject." *Manley*, 142 Idaho at 345, 127 P.3d at 961. Here, the defense counsel for Carter was informed of the State's motion in limine and request for discovery sanctions and to strike improperly introduced evidence in lieu of declaring a mistrial. The defense counsel then heard the State's explanation of the motion and argument for a mistrial if the evidence was not excluded. Afterwards, counsel for the defense was given the opportunity to respond, identify the witnesses, and explain the reason for the evidence. The district court gave defense counsel an opportunity to be heard on the subject, thereby satisfying Carter's right to be heard and, thus, meeting the requirements set forth in *Manley*.

## IV.

## CONCLUSION

Because the district court did not violate Carter's double jeopardy rights, we affirm the district court's denial of Carter's motions to dismiss and judgment of conviction.

Chief Judge GRATTON and Judge MELANSON **CONCUR**.